***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. At all times relevant, the defendant was a duly qualified self-insured with Key Risk Management Services as the servicing agent.
4. The parties stipulated that the date of plaintiff's occupational injury was October 29, 1999.
5. The parties stipulated that the plaintiff's average weekly wage was $293.58, yielding a compensation rate of $195.72.
6. The parties stipulated to the plaintiff's medical records from Concentra Medical Center, Carolina Back Institute, Blue Ridge Family Practice, Carolina Rehabilitation Services, Cedar Healthcare, Dhillon Orthopaedics, Raleigh Associated Medical Specialists, Wake Medical Center, and Joel D. Krakauer, M.D.
7. The issues presented are:
 a) Whether the plaintiff contracted an occupational disease arising out of the course of her employment with the defendant-employer?
 b) Whether plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff-employee was a 42 year old high school graduate who had, prior to working for the defendant-employer, performed service/dietary aide work. The plaintiff-employee had a prior history of carpel tunnel syndrome in her right hand.
2. The plaintiff-employee began working for the defendant-employer in February 1999 as a Dietary Aide. Her job duties included repetitive lifting of food trays and plates, scooping foods with large ladles and spoons, gripping food items with tongs, pushing heavy food carts, mopping and sweeping.
3. During late summer and early fall of 1999, the plaintiff-employee began to develop pain and numbness in her left hand, wrist and arm. The plaintiff-employee reported her problem to her supervisor in October 1999. The plaintiff-employee sought medical treatment with Dr. James Fulghum, orthopaedist, in December 1999 who took the plaintiff-employee off of her full duties with the defendant-employer and restricted the plaintiff-employee's work.
4. Upon plaintiff-employee's attempted return to work, the defendant-employer placed the plaintiff-employee in a job specially tailored to fit plaintiff-employee's restriction. The plaintiff-employee continued to experience problems performing even this modified job. The defendant-employer reprimanded the plaintiff-employee for not working right up to the limits of her restrictions.
5. Dr. Fulghum took the plaintiff-employee out of work on June 9, 2000 pending left carpel tunnel release surgery. The defendant-employer terminated the plaintiff-employee in late June 2000 while she was out of work per Dr. Fulghum's restrictions after surgery. The plaintiff-employee has been out of work since her termination.
6. The plaintiff-employee's condition initially improved after surgery but then worsened. The defendant-employer referred the plaintiff-employee to Dr. Henry Adomonis, a family practitioner, who diagnosed the plaintiff-employee with carpal tunnel syndrome, but did not relate the plaintiff-employee's diagnosis to her work for the defendant-employer.
7. The plaintiff-employee also presented to Dr. Paul Schricker, orthopaedic surgeon, complaining of hand problems. Dr. Schricker diagnosed recurrent symptoms of carpal tunnel release in the left and possibly an incomplete release. Dr. Schricker performed a repeat carpal tunnel release on February 22, 2001.
8. Dr. Schricker opined that the plaintiff-employee's job duties with the defendant-employer placed her at an increased risk for developing carpal tunnel syndrome as compared to members of the general public and that her job duties with the defendant-employer were a contributing factor in the development of her carpal tunnel syndrome. Furthermore, Dr. Schricker opined to a reasonable degree of medical certainty that the plaintiff-employee's job duties with the defendant-employer aggravated, accelerated or exacerbated any pre-existing non-disability carpal tunnel syndrome experienced by the plaintiff-employee.
9. Dr. Fulghum opined that the plaintiff-employee's job duties with the defendant-employer placed her at an increased risk for developing carpal tunnel syndrome and that her duties were a substantial contributing factor in the development of her symptoms.
10. The undersigned gives greater weight to the testimony of Drs. Schricker and Fulghum, both orthopaedic surgeons, over Dr. Adomonis, a family practitioner, who provided no treatment plan for the plaintiff-employee and no extended medical care for the plaintiff-employee during which he could discern or monitor the plaintiff-employee's true course of treatment or improvement.
11. At the hearing, the plaintiff-employee testified that she continues to experience pain, numbness and weakness in her left wrist and arm and has problems in her right arm from overuse. The plaintiff-employee further testified that she has sought employment at malls, grocery stores and on the Internet.
12. The competent evidence in the record establishes that the plaintiff-employee contracted bilateral carpal tunnel syndrome in her arms, hands and wrists arising out of the course of her employment with the defendant-employer.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff contracted the occupational disease of bilateral carpal tunnel syndrome, which was due to causes and conditions characteristic of and peculiar to her particular employment with the defendant-employer and which is not an ordinary disease of life to which the general public is equally exposed. N.C. GEN. STAT. § 97-53(13).
2. The plaintiff contracted bilateral carpal tunnel syndrome, which was due to causes and conditions characteristic of and peculiar to her particular employment with the defendant-employer and which is not an ordinary disease of life to which the general public is equally exposed. N.C. GEN. STAT. § 97-53 (13).
3. As a result of the plaintiff's bilateral carpal tunnel syndrome, the plaintiff is entitled to compensation for temporary total disability benefits at a rate of $195.72 per week beginning June 9, 2000 and continuing until the plaintiff returns to work or until further Order of the Industrial Commission. N.C. GEN. STAT. § 97-29; N.C. GEN. STAT. § 97-2(9).
4. The plaintiff is entitled to have the defendant-employer pay for the plaintiff's medical expenses incurred or to be incurred regarding her bilateral carpal tunnel syndrome including vocational rehabilitation, as a result of the plaintiff's compensable injury by accident, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability. N.C. GEN. STAT. § 97-25; N.C. GEN. STAT. § 97-2(19).
5. The defendant-employer is entitled to a credit for unemployment compensation benefits received by the plaintiff. N.C. GEN. STAT. §97-42.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff in a lump sum temporary total disability compensation at a rate of $195.72 per week beginning June 9, 2000 and continuing until the plaintiff returns to work or until further Order of the Industrial Commission. Compensation due which has accrued shall be paid to the plaintiff in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendants shall pay for all of the plaintiff's medical expenses incurred or to be incurred regarding her bilateral carpal tunnel syndrome, including vocational rehabilitation as a result of plaintiff's compensable injury by accident, for so long as such evaluations, examinations and treatments may reasonably be required to effect a cure, give relief and will tend to lessen the period of plaintiff's disability.
3. As the plaintiff has not yet reached the end of the healing period for her hands, this Opinion and Award does not address this issue. However, in the event that the parties should be unable to agree on the amount of compensation for permanent partial impairment, if any, to her hands, which may be due, either party may request a hearing from the Industrial Commission to resolve this issue.
4 A reasonable attorney's fee of 25% of the compensation awarded to plaintiff under Paragraphs 1 and 2 of this Award is hereby approved to be paid directly to plaintiff's counsel. Consideration and designation of this attorney's fee contemplates that the counsel for the plaintiff shall continue and is hereby ORDERED to monitor the submission of medical expenses to the defendant-employer.
5. The defendants are entitled to a credit for unemployment compensation benefits received by the plaintiff.
6. The defendant shall pay the costs, including expert witness fees of $200.00 to Dr. Fulghum, $489.00 to Dr. Schricker and $220.00 to Dr. Adomonis.
This the ___ day of April 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER